UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILIA ANGELICA LEON BAYRON,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, et al.,<br><br>Defendants. | Case No.:  3:25-cv-787-CAB-KSC<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>**[Doc. No. 34]** |

Before the Court is Plaintiff Emilia Angelica Leon Bayron's ("Bayron") motion for default judgment against Defendant DTC Brands, Inc. ("DTC Brands").  [Doc. No. 34.] The Court denied Bayron's previous motion for default judgment without prejudice for failing to discuss the *Eitel* factors.  [Doc. No. 30.]  The Court finds this matter suitable for disposition on the papers without oral argument.  *See* S.D. Cal. CivLR 7.1(d)(1).  For the reasons below, the Court **GRANTS** Plaintiff's motion.

## I.      BACKGROUND

On September 21, 2022, Bayron was staying at Moxy Gaslamp, a hotel in San Diego, California.  [Doc. No. 9 at 3.]  The hotel provided handheld steamers for its guests to use. [*Id.*]  Bayron was using a steamer manufactured by DTC Brands when it malfunctioned and spewed boiling hot water on her legs.  [*Id.* at 3; Doc. No. 34 at 3.]  She suffered second-degree burns and permanent scarring.  [Doc. No. 34 at 4.]  The hotel had purchased the

steamers from DTC Brands on Amazon.com on February 24, 2022. [Doc. No. 34-1 at 6–7.] Bayron alleges that Defendants knew or should have known that the device was unsafe, yet failed to replace it, repair it, or warn her. [Doc. No. 34 at 3.]

On May 30, 2025, Bayron filed her first amended complaint for negligence and products liability against Defendants DTC Brands and Amazon.com Services, LLC ("Amazon"). [Doc. No. 9.] Bayron and Defendant Amazon settled all claims between one another. [*See* Doc. Nos. 29, 32.] DTC Brands, however, never answered or filed a responsive pleading despite Bayron filing proof of service of the summons and complaint. [Doc. No. 13.]

On July 17, 2025, the Clerk of Court entered default against DTC Brands. [Doc. No. 15.] On August 18, 2025, Bayron filed a motion for default judgment against DTC Brands. [Doc. No. 22.] She has filed proof of service of the motion. [Doc. No. 34-1 at 19–21.] On January 7, 2026, the Court denied the motion for failing to discuss the *Eitel* factors. [Doc. No. 30.] On February 6, 2026, Bayron filed the instant, second motion for default judgment. [Doc. No. 34.] DTC Brands has still not responded.

## II.    JURISDICTION

On May 4, 2026, the Court issued an order to show cause for Bayron to sufficiently plead that the Court has jurisdiction over this case. [Doc. No. 36.] In her response, Bayron stated that the Court has diversity jurisdiction because (1) the amount in controversy exceeds $75,000 and (2) Bayron is a citizen of California while DTC Brands is a citizen of New York (where it is incorporated and has its principal place of business). [Doc. No. 37 at 3.] Accordingly, the Court finds it has diversity jurisdiction over this matter. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) ("[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged.").

## III.    DISCUSSION

Under Federal Rule of Civil Procedure 55(b)(2), a district court may grant a default judgment against a defendant after an entry of default. *See* Fed. R. Civ. P. 55(b)(2). Whether to grant a default judgment is a matter within the discretion of the court. *See*

3:25-cv-787-CAB-KSC

*Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). In evaluating a motion for default judgment, the court accepts as true all well-pled factual allegations in the complaint, except those that pertain to damages. *See also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th. Cir. 1986) (finding that "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(b).

Before considering the merits of the claim and whether default judgment is appropriate, the court must first determine whether the plaintiff's service of process on the defendant was sufficient. *See United States v. 4268 Los Angeles Ave. Simi Valley California 93063*, 672 F. App'x 770, 770 (9th Cir. 2017) ("A default judgment must be set aside if the court lacked jurisdiction over the defendants due to insufficient service of process.").

### A. Service of Process

Under Federal Rule of Civil Procedure 4, an individual within a judicial district of the United States may be served by doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). Alternatively, service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(e)(1). Finally, proof of service must be provided by the process server's affidavit. Fed. R. Civ. P. 4(l)(1).

Bayron has filed proofs of service, which are signed under penalty of perjury by the respective server, for both the amended complaint and the initial motion for default

3:25-cv-787-CAB-KSC

judgment. [Doc. No. 13; Doc. No. 34-1 at 18–21.] As for the amended complaint, the server testifies she served Isaac Salem, who is designated by law to accept service of process on behalf of DTC Brands. [Doc. No. 13.] As for the motion for default judgment, the server testifies she served Gail Admoni, the manager of DTC Brand's finance department. [Doc. No. 34-1 at 19]; *see Garcia v. Cnty. of San Diego*, No. 15-CV-189 JLS (NLS), 2016 WL 11621400, at *5 (S.D. Cal. Mar. 22, 2016) ("Substitute service can be effected by serving a copy of the complaint and summons at the defendant's place of business with a 'person apparently in charge' or to a person authorized to receive service."). With service established, the Court considers whether granting default judgment is warranted.

### B. *Eitel* Factors

The Ninth Circuit in *Eitel v. McCool* set forth seven factors which courts are to consider when determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471–72 (9th Cir. 1986). The Court addresses the *Eitel* factors below.

### 1. Possibility of Prejudice

Bayron suffered a serious burn injury and permanent scar due to DTC Brands' steamer. If default judgment is not granted, Bayron will likely have no recourse against DTC Brands. Accordingly, the first *Eitel* factor weighs for Bayron.

### 2. Merits of Plaintiff's Claim & Sufficiency of Complaint

The merits of the claim and sufficiency of the complaint are analyzed together and require the plaintiff to "state a claim on which the [plaintiff] may recover. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) (quoting *Danning*

3:25-cv-787-CAB-KSC

*v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (alteration in original).  Bayron brings claims for products liability and negligence against DTC Brands.  [Doc. No. 9 at 3–4.]

### i.    Products Liability

Under California law, "[a] manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way." *Soule v. Gen. Motors Corp.,* 8 Cal. 4th 548, 560 (1994).  "[A] plaintiff may seek recovery in a products liability case either on the theory of strict liability in tort or on the theory of negligence." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001) (quotation marks omitted).  As to strict products liability, its elements "are a defect in the manufacture or design of the product or a failure to warn, causation, and injury." *Nelson v. Superior Ct.,* 144 Cal. App. 4th 689, 695 (2006).  Bayron alleges that the steamer had a manufacturing defect, design defect, and lacked an appropriate warning.

### a.  Manufacturing Defect

"A plaintiff pursuing a manufacturing defect claim must inter alia identify/explain how the product either deviated from the manufacturer's intended result/design or how the product deviated from other seemingly identical models; a bare allegation that the product had 'a manufacturing defect' is an insufficient legal conclusion." *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1160 (E.D. Cal. 2019).  Bayron offers only conclusory statements that the steamer had a manufacturing defect; she does not identify if or how the steamer she used deviated from DTC Brands' intended design.  [*See* Doc. No. 34 at 4.] Accordingly, she fails to state a claim for products liability based on a manufacturing defect.

### b.  Design Defect

"In a strict liability action based on defective design, a product is defective . . . if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner[.]" *Merrill*, 26 Cal. 4th at 479.  Bayron alleges that she was using DTC Brands' handheld steamer for its ordinary purpose when it

3:25-cv-787-CAB-KSC

spewed out boiling water which burned her leg.  [Doc. No. 9 at 4.]  The Court finds Bayron sufficiently pleads a claim for products liability based on a design defect.

### c.  Failure to Warn

For a failure to warn claim, in addition to alleging that the product lacked sufficient warnings of risk, a plaintiff must allege, *inter alia*, (1) that the risks that were known or knowable at the time of manufacture, distribution, or sale, (2) that the risks presented a substantial danger to users of the product, and (3) that ordinary consumers would not have recognized the potential risks.  *See Lin v. Solta Med., Inc.*, 760 F. Supp. 3d 926, 935 (N.D. Cal. 2024).  While Bayron alleges that the steamer lacked warnings of its "dangerous condition," [Doc. No. 9 at 3–4], she fails to allege that any danger or risk was known or reasonably known by DTC Brands at the time of manufacture, distribution, or sale, or that an ordinary user of the steamer would not have recognized the potential danger or risk. Accordingly, she fails to state a claim for products liability based on failure to warn.

Given that Bayron states a products liability claim based on strict liability, the Court declines to additionally analyze the products liability claim on a negligence theory.

### ii.    Negligence

Regarding Bayron's standalone negligence claim, she is required to sufficiently plead that DTC Brands owed her a legal duty and breached that duty.  *See Gonzalez v. Autoliv ASP, Inc.*, 154 Cal. App. 4th 780, 793 (2007).  The only legal duty that Bayron alleges appears to refer to the Moxy Hotel, which is not a defendant in this case.  Indeed, she states that "Defendants owed a duty of care to Plaintiff to act in a reasonable, prudent, and careful manner in the inspection, maintenance, and repair of the *amenities offered to her, as a guest of Defendant's hotel*, and failed to do so[.]"  [Doc. No. 9 at 3 (emphasis added).]

Even if the Court infers a duty of care to DTC Brands, Bayron does not offer any facts showing that any defect in the steamer was due to negligence, or a breach of duty, by DTC Brands.  *See Gonzalez*, 154 Cal. App. 4th at 793.  In any case, the Ninth Circuit has held that "because of the difficulty of establishing fault or negligence in products liability

3:25-cv-787-CAB-KSC

cases, strict liability is the appropriate legal theory to hold manufacturers liable for defective products." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035 (9th Cir. 1991).

As Bayron states a claim for products liability based on defective design, the Court finds the second and third *Eitel* factors favor granting default judgment.

### 3.  Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Bayron seeks $3 million in damages from DTC Brands.  [Doc. No. 37 at 4.]  "When the money at stake in the litigation is substantial . . . default judgment is discouraged." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).  As Bayron seeks a substantial amount of money, the fourth *Eitel* factor weighs against her.

### 4.  Possibility of a Dispute

DTC Brands' "failure to appear despite proper service suggests that it is unlikely that a dispute of material fact will arise in the future." *Thayer v. Sawyer*, No. 5:24-CV-01749-BLF, 2025 WL 489364, at *6 (N.D. Cal. Feb. 12, 2025).  In any case, the material facts are straightforward.  Bayron alleges she was using a handheld steamer manufactured and sold by DTC Brands in a normal fashion when it spewed boiling hot water on her legs. Bayron's medical records show she suffered substantial burns and permanent scarring consistent with boiling water falling on her leg.  Accordingly, the Court finds the fourth *Eitel* factor weighs for Bayron.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion." (internal citation omitted)).

### 5.  Excusable Neglect

Nearly one year has elapsed since Bayron served DTC Brands with the summons and amended complaint, [Doc. No. 13], and nine months since she served the initial motion for default judgment, [Doc. No. 34-1 at 19–21], yet DTC Brands has never appeared nor

3:25-cv-787-CAB-KSC

responded.  *See Doe v. United States*, No. CV-17-01991-PHX-GMS-JZB, 2018 WL 2431774, at *7 (D. Ariz. May 30, 2018) (considering the length of time since the defendant was served when analyzing excusable neglect).  There is no evidence that DTC Brands' failure to appear, or otherwise defend, was the result of excusable neglect.  Accordingly, the sixth *Eitel* factor weighs for Bayron.

### 6.  Policy Underlying Federal Rules of Civil Procedure

"[D]efault judgments are generally disfavored.  Whenever it is reasonably possible, cases should be decided upon their merits."  *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  "However, where a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (internal quotation marks omitted).  As DTC Brands has not appeared or responded in this case, a decision on the merits is impossible.  Accordingly, the seventh *Eitel* factor weighs for Bayron.

### C. Relief Sought

"Upon entry of default, a plaintiff is required to prove the amount of his damages, because neither the default nor the allegations in the complaint can establish the amount of damages."  *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Here, the complaint seeks an unspecified amount of economic and non-economic damages, interest, and costs of suit.  [Doc. No. 9 at 4.]  In her motion for default judgment, however, Bayron specifies that she seeks $3 million in damages; she does not mention recovery of any attorney fees, costs, or interest, or provide any proof for them, so the Court does not consider them.

Bayron states that she seeks $67,949.23 in economic damages—$13,449.23 in medical bills she has incurred and $54,500 in future medical expenses she expects to incur to address the scarring.  [Doc. No. 34 at 5.]  Bayron seeks the remaining $2.93 million as

8

general or non-economic damages for "liv[ing] with a permanent scar across her leg for the rest of her life[.]"[1]  [*Id.*]  She states that the scar has made her self-conscious and affected the clothes she wears and the places she goes.  [Doc. No. 34-2 at 3.]  For example, she no longer wears skirts, bathing suits, or shorts, and avoids the beach.  [*Id.*]

Regarding the $67,949.23 in incurred and expected medical expenses, Bayron provides sufficient evidence through medical records and affidavits to prove those damages.  [*See, e.g.*, Doc. No. 34-2 at 2, 83, 175, 177.]  As to the remaining $2.93 million sought in general/non-economic damages, the Court looks to "awards in previous cases that are similar enough to serve as a meaningful benchmark [which] may provide insight in determining whether an award [is] within reasonable bounds."  *Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024) (internal quotation marks omitted).  Bayron provided the three cases below for the Court to consider.

First, in *Precious King v. Maxi-Matic USA*, the plaintiff was awarded $4.95 million in non-economic damages for disfigurement and second degree burns to the arms, chest, and face, which was caused by a defective pressure cooker that exploded.  21 N.W.P.I.Lit.Rpts. 108, 2018 WL 11341997 (Cal. Super. Oct. 22, 2018).  Second, in *Ries v. Zolghadr*, the plaintiff was awarded $1.85 million for pain and suffering for second degree burns to the thighs, buttocks, and hand and permanent scarring when an e-cigarette battery exploded.  JVR No. 1511120035, 2015 WL 7008465 (Cal. Super. Sept. 30, 2015).  Finally, in *Cobb v. Oriental Trading Co., Inc.*, the plaintiff was awarded $3.5 million for pain and suffering for third degree burns to the back, buttocks, legs, and right hand when her hula skirt caught fire.  JVR No. 468652, 2005 WL 5553292 (Jan. 1, 2005).

*Ries* is most similar to this case as both consist of second degree burns and permanent scarring, rather than *Cobb* which was third degree burns and *Precious King* which included

---

[1] Bayron is currently 35 years old.

facial disfigurement.  The Court finds that Bayron has proved general/non-economic damages in the amount of $1.9 million.

### IV.    CONCLUSION

Given that all *Eitel* factors except for the fourth factor favor granting default judgment, the Court **GRANTS** the motion for default judgment. [Doc. No. 34.] Judgment shall be entered in favor of Bayron in the amount of $1,967,949.23.

It is **SO ORDERED**.

Date:  June 12, 2026

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:25-cv-787-CAB-KSC